Mary Jo O'Neill, AZ Bar #005924
Andrea G. Baran, MO Bar #45620
Richard I. Sexton, PA Bar #202584
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5003
Fax: (602) 640-5009
Email:  mary.oneill@eeoc.gov
        andrea.baran@eeoc.gov
        richard.sexton@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | ) )  ) **COMPLAINT** |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CTI, Inc., an Arizona corporation, | ) ) |
| Defendant. | ) ) ) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991 against Defendant CTI, Inc., to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Elizabeth Barr, Myron Pruett, and other aggrieved individuals.  As stated with greater particularity below, the Equal Employment Opportunity Commission alleges that Defendant CTI engaged in unlawful conduct when it failed to accommodate and terminated qualified employees with

disabilities. Specifically, the EEOC alleges that Defendant CTI maintained and administered two policies or practices in a way that denied employment opportunities to people with disabilities. First, Defendant CTI utilized a "no medical restriction" policy or practice that prohibited employees from working if they have any medical restriction. Second, Defendant CTI utilized a maximum leave policy that required employees be terminated if they are unable return to "full, unrestricted duty" after twelve weeks of leave. The EEOC alleges that Defendant CTI discriminated against Ms. Barr, Mr. Pruett, and other aggrieved individuals with disabilities by failing to make reasonable accommodation to the known physical or mental limitations of these otherwise qualified individuals with disabilities and terminating their employment because of their disabilities and/or because they needed reasonable accommodation. Upon information and belief, the EEOC alleges that Defendant CTI continues to engage in these discriminatory practices.

**JURISDICTION AND VENUE**

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. Section 706(f)(1), (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1), (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981A.

2.  The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the District of

Arizona.

**PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and (3).

4. At all relevant times, Defendant CTI, Inc., an Arizona corporation, has continuously been and is now doing business in the State of Arizona and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant CTI has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant CTI has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**GENERAL ALLEGATIONS**

**I.   Conditions Precedent**

7. More than thirty days prior to the institution of this lawsuit, Elizabeth Barr filed a charge of discrimination with the EEOC alleging violations of Title I of the ADA

by Defendant CTI.

8. The EEOC provided Defendant CTI with notice of the charge of discrimination.

9. The EEOC investigated the charge of discrimination.

10. Based on evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Defendant CTI engaged in certain unlawful employment practices identified in the determination.

11. The EEOC's determination included an invitation for Defendant CTI to join the Commission in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

12. Defendant CTI agreed to participate with the EEOC in this informal conciliation process.

13. The EEOC and Defendant CTI were unable to reach an agreement through the conciliation process.

14. The EEOC sent notice to the Defendant CTI that conciliation efforts had failed.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

**II.    Defendant CTI, Inc.**

16. Since at least November 2009, Defendant CTI has engaged in unlawful employment practices in violation of § 102 of Title I of the ADA, 42 U.S.C. § 12112.

17. Defendant CTI is a regional company with locations in Arizona, California,

- 4 -

New Mexico, and Texas.

18.     Defendant CTI is a truck transporter of bulk commodities, including cement, lime, and flyash.

19.     Defendant CTI is headquartered in Rillito, Arizona.

### III.    Defendant CTI's "No Medical Restrictions" Policy

20.     At all relevant times, Defendant CTI instituted and/or maintained a policy or practice that prohibits employees with medical restrictions from working ("no medical restrictions" policy).

21.     Under its "no medical restrictions" policy, Defendant CTI will not allow employees with disabilities to work if they have medical restrictions, regardless of whether there are reasonable accommodations to the employees' physical or mental limitations.

22.     Under its "no medical restrictions" policy, Defendant CTI does not initiate an interactive process with employees with disabilities to identify the precise limitations resulting from their disabilities and potential reasonable accommodations that could overcome those limitations.

### IV.    Defendant CTI's Twelve (12) Week Maximum Leave Policy

23.     At all relevant times, Defendant CTI instituted and/or maintained a policy or practice which allows disabled employees with medical restrictions to take leave of absence of up to, but no longer than, twelve (12) weeks (maximum leave policy).

24.     The way Defendant CTI administers this policy is to discharge disabled employees who are unable to return to full, unrestricted duty after twelve (12) weeks of

medical-related leave.

25. Under CTI's maximum-leave policy, as administered, before discharging employees with disabilities, Defendant CTI does not initiate an interactive process to identify the precise limitations resulting from their disabilities and potential reasonable accommodations that could overcome those limitations.

## V. Charging Party Elizabeth Barr

26. Defendant CTI hired Ms. Barr in November 2002.

27. Ms. Barr worked for CTI as a payroll and billing clerk.

28. Ms. Barr satisfactorily performed the essential functions of her job during the time that she worked for Defendant CTI.

29. In May 2010, Ms. Barr was diagnosed with a rare eye disease called Fuchs endothelial dystrophy.

30. As a result of her eye disease, Ms. Barr's vision substantially deteriorated.

31. As a result of her eye disease, Ms. Barr had to undergo cataract surgery and corneal transplant surgery on both eyes.

32. Ms. Barr's eye disease substantially limits, at a minimum, the major life activities of seeing, reading, and performing manual tasks.

33. Ms. Barr's eye disease also substantially limits the operation of a major bodily function, such as special sense organs and/or normal cell growth,

34. At all relevant times, Ms. Barr was a qualified individual with a disability as defined by the ADA.

35. In May 2010, Ms. Barr notified Defendant CTI of her medical condition

and requested leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*.

36. The FMLA entitles eligible employees of covered employers to up to twelve (12) weeks of job-protected, unpaid leave during any 12-month period for care of the employee's own serious health condition.

37. On or about May 18, 2010, Defendant CTI received an FMLA certification form from the Pima Eye Institute indicating that Ms. Barr needed corneal transplant operations.

38. Defendant CTI placed Ms. Barr on FMLA leave with an effective date of May 10, 2010.

39. On or about July 20, 2010, Defendant CTI sent a letter to Ms. Barr explaining that her FMLA leave would be exhausted on August 2, 2010.

40. The letter stated, in part, "Should you not be released to full, unrestricted duty on or before August 2, 2010, your employment and health benefits may be terminated."

41. Ms. Barr asked Defendant CTI to keep her job open.

42. Ms. Barr asked Defendant CTI to extend her leave.

43. Defendant CTI denied Ms. Barr's requests to keep her job open and/or to extend her leave.

44. Defendant CTI did not initiate or engage with Ms. Barr in any interactive process to identify the precise limitations resulting from her disability and potential accommodations that could overcome those limitations.

- 7 -

45.     Defendant CTI did not propose or offer any potential reasonable accommodations to Ms. Barr's physical limitations.

46.     The reasonable accommodations proposed by Ms. Barr would not have imposed an undue hardship on the operation of Defendant CTI's business.

47.     On or about August 2, 2010, Defendant CTI sent a letter to Ms. Barr terminating her employment.

48.     The discharge letter stated, "While we are disappointed that you have not been released to full, unrestricted duty, we certainly wish you the best in your endeavors."

49.     Defendant CTI discharged Ms. Barr on August 2, 2010.

50.     After Defendant CTI discharged Ms. Barr, she maintained her health insurance by paying her premiums out-of-pocket.

51.     Defendant CTI discharged Ms. Barr because of her disability and/or because she needed a reasonable accommodation to her physical limitations.

52.     The policies and practices complained of in the paragraphs deprived Ms. Barr of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

## VI.   Aggrieved Individual Myron Pruett

53.     Defendant CTI hired Myron Pruett in October 2002.

54.     Mr. Pruett worked for CTI as a Driver.

55.     Mr. Pruett satisfactorily performed the essential functions of his job during the time he worked for Defendant CTI.

56. In March 2010, Mr. Pruett was hospitalized with severe hypoxia, pneumonia, and respiratory failure.

57. Mr. Pruett's respiratory conditions substantially limited, at a minimum, the major life activities of breathing, performing manual tasks, lifting, and walking.

58. Mr. Pruett's respiratory conditions substantially limit the operation of a major bodily function, such as respiratory function.

59. Since at least March 2010, Mr. Pruett was a qualified individual with a disability as defined by the ADA.

60. On April 30, 2010, Mr. Pruett notified Defendant CTI that he needed to take FMLA leave due to his serious health condition.

61. Defendant CTI placed Mr. Pruett on FMLA leave effective April 30, 2010.

62. Defendant CTI instructed Mr. Pruett that he needed to be released to full, unrestricted duty at the conclusion of his FMLA leave.

63. In or about July 2010, Mr. Pruett requested transfer to a position in Defendant CTI's safety department.

64. In or about July 2010, there were positions available in Defendant CTI's safety department that Mr. Pruett could have performed with or without a reasonable accommodation and for which he was qualified.

65. Defendant CTI denied Mr. Pruett's request for transfer to an available position in the safety department.

66. Defendant CTI did not initiate or engage with Mr. Pruett in any interactive process to identify the precise limitations resulting from his disability and potential

accommodations that could overcome those limitations.

67. Defendant CTI did not propose or offer any potential reasonable accommodations to Mr. Pruett's physical limitations.

68. The reasonable accommodation proposed by Mr. Pruett would not have imposed an undue hardship on the operation of Defendant CTI's business.

69. On or about August 16, 2010, Defendant CTI sent a letter to Mr. Pruett terminating his employment.

70. The discharge letter stated, "While we are disappointed that you have not been released to full, unrestricted duty, we certainly wish you the best in your endeavors."

71. Defendant CTI discharged Mr. Pruett on August 16, 2010.

72. Defendant CTI discharged Mr. Pruett because of his disability and/or because he needed a reasonable accommodation to his physical limitations.

73. The e policies and practices complained of in the paragraphs above deprived Mr. Pruett of equal employment opportunities and otherwise adversely affected his status as an employee because of his disability.

**VII. Other Aggrieved Individuals**

74. Following its "no medical restrictions" policy, Defendant CTI has refused to allow employees to work with disability-related medical restrictions.

75. Following its "no medical restrictions" policy, Defendant CTI has refused to make reasonable accommodation to the known physical and mental limitations of otherwise qualified individuals with disabilities.

- 10 -

76. Following its "no medical restrictions" policy Defendant CTI has discharged additional employees with disabilities who, with or without reasonable accommodation, could perform the essential functions of their jobs or other available positions.

77. Defendant CTI refused to extend medical leave beyond the twelve (12) weeks required by the FMLA, even when extended leave would have reasonably accommodated the disability-related physical or mental limitations of qualified employees with disabilities.

78. Following its "no medical restrictions" policy Defendant CTI discharged qualified employees with disabilities because of their disabilities and/or because they needed reasonable accommodation of their known physical or mental limitations.

79. Following its "no medical restrictions" policy Defendant CTI has failed to make reasonable accommodation to the known physical and mental limitations of qualified employees with disabilities.

80. The policies and practices complained of in the paragraphs above deprive qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

81. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## FIRST CLAIM FOR RELIEF
**Failure to Provide Reasonable Accommodation**
**42 U.S.C. §§ 12112(a) and (b)(5)(A)**

82. EEOC reasserts and incorporates by reference all of the foregoing

- 11 -

allegations.

83. Elizabeth Barr is a qualified individual with a disability.

84. Myron Pruett is a qualified individual with a disability.

85. Defendant CTI failed to make reasonable accommodation to the physical and mental limitations of Ms. Barr, Mr. Pruett, and other qualified employees with disabilities.

86. Defendant CTI failed to initiate or engage with Ms. Barr, Mr. Pruett, or other qualified employees with disabilities to identify the precise limitations resulting from their disabilities and potential accommodations that could overcome those limitations.

87. The policies and practices complained of in the paragraphs above deprive a group of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

88. The unlawful employment practices complained of in the foregoing were and are intentional.

89. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Ms. Barr, Mr. Pruett, and other aggrieved individuals.

90. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

**SECOND CLAIM FOR RELIEF**
**Discriminatory Discharge**
**42 U.S.C. §§ 12112(a) and (b)(5)(B)**

91. EEOC reasserts and incorporates by reference all of the foregoing allegations.

92. Elizabeth Barr is a qualified individual with a disability.

93. Myron Pruett is a qualified individual with a disability.

94. Defendant CTI terminated Ms. Barr, Mr. Pruett, and other qualified employees with disabilities because of their disabilities and/or because they had physical or mental limitations requiring reasonable accommodation.

95. The policies and practices complained of in the paragraphs above deprive a group of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

96. The unlawful employment practices complained of in the foregoing paragraphs were and are intentional.

97. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Ms. Barr, Mr. Pruett, and the other aggrieved individuals.

98. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

### THIRD CLAIM FOR RELIEF
**Use of Discriminatory Qualification Standards**
**42 U.S.C. §§ 12112(a) and (b)(6)**

99. EEOC reasserts and incorporates by reference all of the foregoing allegations.

100. During the relevant time period, Defendant CTI utilized and/or maintained a "no medical restrictions" policy or practice that does not allow employees with disabilities to work if they have medical restrictions.

101. Under Defendant's "no medical restrictions" policy, employees with disabilities who have exhausted FMLA leave or have no FMLA leave, are terminated unless they are able to work "full, unrestricted duty."

102. Defendant CTI's "no medical restrictions" policy is a qualification standard that screens out and/or tends to screen out for employment individuals with disabilities or a class of individuals with disabilities.

103. The policies and practices complained of in the foregoing paragraphs deprive a group of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

104. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

### FOURTH CLAIM FOR RELIEF
**Use of Discriminatory Standards, Criteria, or Methods of Administration**
**42 U.S.C. §§ 12112(a) and (b)(3)(A)**

105. EEOC reasserts and incorporates by reference all of the foregoing allegations.

106. During the relevant time period, Defendant CTI utilized and/or maintained a "no medical restrictions" policy or practice that does not allow employees with disabilities to work if they have medical restrictions.

107. Under Defendant's "no medical restrictions" policy, employees with

- 14 -

disabilities who have exhausted FMLA leave or have no FMLA leave, are terminated unless they are able to work "full, unrestricted duty."

108.  Defendant CTI's "no medical restrictions" policy has an adverse impact on individuals with disabilities.

109.  Defendant CTI's "no medical restrictions" policy is a standard, criteria, or method of administration that has the effect of discrimination on the basis of disability.

110.   The effect of the policies and practices complained of in the foregoing paragraphs has been to deprive a group of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

111.  The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court

A. Grant a permanent injunction enjoining Defendant CTI, its officers, successors, assigns, and all persons in active concert or participation with it, from discriminating against employees because of a disability.

B. Order Defendant CTI to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant CTI to make whole Ms. Barr, Mr. Pruett, and other

aggrieved individuals for whom the EEOC seeks relief by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Ms. Barr, Mr. Pruett, and other aggrieved individuals, or front pay in lieu thereof.

D. Order Defendant CTI to make whole Ms. Barr, Mr. Pruett, and other aggrieved individuals for whom the EEOC seeks relief, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including but not limited to relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial.

E. Order Defendant CTI to make whole Ms. Barr, Mr. Pruett, and other aggrieved individuals for whom the EEOC seeks relief by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of credit standing, and stress, in amounts to be determined at trial.

E. Order Defendant CTI to pay Ms. Barr, Mr. Pruett, and other aggrieved individuals for whom the EEOC seeks relief, punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

F. Grant such further relief as this Court deems necessary and proper.

G. Award the EEOC its costs of this action.

# JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint, except the claims for disparate impact.

RESPECTFULLY SUBMITTED this 30th day of September, 2013.

MARY JO O'NEILL
Regional Attorney

ANDREA G. BARAN
Supervisory Trial Attorney

*/s/Richard I. Sexton*
RICHARD I. SEXTON
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012
(602) 640-5003

Attorneys for Plaintiff